**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **THE UNITED STATES OF AMERICA** ***for the use and benefit of*** **ACK MARINE & GENERAL CONTRACTING, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WALSH FEDERAL, LLC and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,**<br><br>**Defendants.** | **Civil Action No. 24-10537-BEM** |

**MEMORANDUM AND ORDER ON**
**PARTIES' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

**MURPHY, J.**

This action arose out of a subcontract between Defendant Walsh Federal, LLC ("Walsh") and its subcontractor, Plaintiff ACK Marine and General Contracting, LLC ("ACK Marine" or "ACK"), to demolish and reconstruct wharf and pier structures at a United States Coast Guard ("USCG") base in Boston. During the project, ACK Marine submitted many proposed change orders ("PCOs"), requesting additional payment in light of challenges in executing the demolition and construction work. When Walsh failed to compensate ACK Marine as requested, ACK Marine sued both Walsh and Defendant Travelers Casualty and Surety Company of America ("Travelers," together with Walsh, "Defendants"), which had issued a payment bond with Walsh as the principal. ACK Marine brought claims for breach of contract, quantum meruit, and a violation of Mass. Gen. Laws ch. 93A against Walsh (Counts I–III, respectively), as well as a claim on the payment bond against Travelers (Count IV). Walsh then brought counterclaims for breach of contract, quantum

meruit, negligence, breach of the implied covenant of good faith and fair dealing, indemnification, and unfair or deceptive trade practices (Counterclaims I–VI).

This Court suggested, and the parties agreed, that first moving for partial summary judgment on a subset of the PCOs might help clarify the issues for trial. Walsh and Travelers moved for partial summary judgment on Counts I, II, and IV, as to a subset of the PCOs. ACK Marine cross-moved for partial summary judgment on Counts I and III and Counterclaim I, as to a subset of the PCOs and Walsh's asserted backcharges. For the reasons set forth below, the Court will deny both motions for partial summary judgment.

## I. <u>Background</u>

### A. <u>Factual Background</u>

In May 2021, Walsh entered into a contract (the "Prime Contract") with the USCG to design and construct new structures at a Boston USCG station (the "Project"). Dkt. 101 ("Walsh's Response to ACK Marine's Statement of Material Facts" or "WRSMF") ¶¶ 1–2; Dkt. 112 ("ACK Marine's Response to Walsh's Statement of Material Facts" or "ARSMF") ¶ 6[1]; *see also* Dkt. 101-4. The Prime Contract incorporated relevant Federal Acquisition Regulations ("FAR"). ARMSF ¶ 7. In July 2021, ACK Marine and Walsh entered into a subcontract agreement (the "Subcontract") for $6,081,900, under which ACK Marine would demolish existing wharf and pier structures and construct new wharf and pier structures. *Id.* ¶ 12; *see also* Dkt. 78-6 ("Subcont.").

ACK Marine began work on the project in February of 2022. ARSMF ¶ 118. One of ACK Marine's first tasks was demolition work sawing the deck slab on the existing wharf and pier. *Id.* ¶ 119. After removing the concrete deck on the existing structures, ACK Marine had to remove

[1] Unless otherwise indicated, citations to the ARSMF and WRSMF refer to the facts as admitted or substantially agreed upon by the parties.

the piles, which had supported the deck and anchored the structures to the seabed. *Id.* ¶¶ 22–23, 32. ACK Marine claimed that removing the piles was more difficult than expected. *See, e.g.*, *id.* ¶¶ 33, 40. The Subcontract contemplated 110 days for the demolition activities, but the demolition took significantly longer. *Id.* ¶ 25.[2] In addition, ACK Marine encountered subsurface obstructions that had to be removed in order to drive in the new piles. WRSMF ¶ 22. In total, ACK Marine submitted over 100 proposed change orders ("PCOs") to Walsh seeking payment for purported extra work. ARSMF ¶ 28. Many, if not all, of the PCOs were submitted after the work was completed. *Id.*

ACK Marine claims that Walsh only paid ACK Marine $7,564,422.33 of the $14,797,550 that ACK Marine billed to Walsh in total, and that Walsh owes ACK Marine $7,233,127.67 for additional work. Dkt. 1 ("Compl.") ¶¶ 58–60. Facts specific to the individual claims are discussed in more depth in the discussion. *See infra* Section III.

### B. <u>Procedural Background</u>

On March 4, 2024, ACK Marine brought suit against Walsh alleging breach of contract, quantum meruit, and a violation of Mass. Gen. Laws ch. 93A, and against Travelers for a claim against the payment bond Travelers issued with Walsh as principal. Compl. ¶¶ 68–91. Walsh brought counterclaims for breach of contract, quantum meruit, negligence, breach of the implied covenant of good faith and fair dealing, indemnification, and unfair or deceptive trade practices. Dkt. 8 ¶¶ 20–49.[3] On June 11, 2026, ACK Marine moved to bifurcate the trial into two phases to

---

[2] The parties dispute exactly how much longer. Defendants assert that "demolition actually took ACK Marine 642 days to complete per the As-Built Schedule," but ACK Marine "disputes that it took 642 total days to complete the demolition," because "[d]emolition activities may have spanned over a total of 483 days, but they were not done continuously as ACK Marine's personnel had to be moved to other areas to address various issues that came up during construction." ARSMF ¶ 25.

[3] In Defendants' answer and counterclaim, Dkt. 8, Defendants restart numbering with ¶ 1 at the beginning of the section raising counterclaims. The paragraphs cited here, ¶¶ 20–49, are found on pages 15–19.

streamline the presentation of evidence related to the dozens of PCOs at issue. Dkts. 68–69. At the hearing on the motion to bifurcate, the Court denied the motion but granted leave to Walsh to file an initial partial motion for summary judgment on a representative sample of the PCOs at issue to facilitate resolution of the case. *See* Dkt. 72.

On July 30, 2026, Walsh and Travelers moved for partial summary judgment on Counts I, II, and IV, as to a subset of the PCOs. Dkts. 77–78. ACK Marine cross-moved for partial summary judgment on Counts I and III and Counterclaim I as to a subset of the PCOs and Walsh's claimed backcharges. Dkts. 83–84. The Court held a hearing on September 3, 2026, and took the matter under advisement.

## II. <u>**Standard of Review**</u>

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)).

The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). However, "[t]he nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that *every essential element* of its claim or defense is at least trialworthy." *Price v.*

*Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991) (emphasis in original). "Where the non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'" *Satanic Temple, Inc. v. City of Bos.*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024).

## III. Discussion

### A. Defendants' Motion for Partial Summary Judgment

#### 1. Count I: Breach of Contract

##### a. Pass-Through Claims

Defendants move for summary judgment as to three of ACK Marine's extra cost items—PCO 61, PCO 9R1, and PCOs 32 and 33 *et seq.*—on the grounds that they are "pass-through claims" for which USCG was responsible, and which Walsh passed through to the USCG for approval or denial. *See* Dkt. 77 at 1; Dkt. 78 at 8–11. Defendants argue that under Article 11.3 of the Subcontract, ACK Marine "agree[d] to be bound to [Walsh] and [Walsh's] surety to the same extent that [Walsh] is bound to [the USCG]," and points to the following language in that provision:

> [Walsh] and [Walsh's] surety shall not be liable to Subcontractor in excess of any sum actually received from [the USCG] on behalf of [ACK Marine] for a Pass Through Claim and [Walsh] and [Walsh's] surety shall only be required to pay [ACK Marine]: (i) if [the USCG] has stated to [Walsh] in writing that [ACK Marine] is entitled to additional payment; and (ii) if, and only if, [the USCG] pays [Walsh] that additional amount, which are both express conditions precedent to [Walsh's] and its surety's duty to pay [ACK Marine] and that the [ACK Marine] intends to assume the risk of nonpayment.

Dkt. 78 at 7 (alterations in original) (quoting Subcont. at 15). Defendants argue that Walsh owes nothing beyond what the USCG approved, and therefore nothing further on these extra cost items. *Id.* at 17–18; *see also* Dkt. 77 at 1 ("Article 11.3 of the Subcontract bars ACK Marine from

recovering on its [PCOs] involving 'Pass-Through Claims' which were already rejected in whole or in part by the [USCG].").

ACK Marine argues that these three extra cost items are *not* pass-through claims and that "[e]ven if they are deemed to be pass-through claims, Walsh breached the Subcontract by failing to sponsor those pass-through claims in good faith." Dkt. 94 at 3. In addition, ACK Marine raises several arguments specific to each PCO. *Id.* at 4–16. The Court considers each claim in turn.

**i. <u>Pile Extraction Claim (PCO 61)</u>**

Under the Subcontract, ACK Marine was to "Pull & Dispose of Concrete Filled Piles." Subcont. at 21; *see also* ARSMF ¶ 23. During pile extraction, some piles fractured or broke. WRSMF ¶ 12. ACK Marine claims that the piles were longer than represented in the contract documents, and "were well past their service life," which posed "a safety risk." *Id.* ¶¶ 10–11, 13. ACK Marine and Walsh communicated in April 2022 regarding ACK Marine's request for relief from the Subcontract's requirements regarding pile extraction. ARSMF ¶ 123. Ultimately, the USCG relieved ACK Marine of the obligation to extract the existing piles, and ACK Marine used dive teams to cut the existing piles below the mudline. *Id.* ¶¶ 124–25; WRSMF ¶ 14.

On September 28, 2023, ACK Marine submitted PCO 61, seeking an additional $1,463,391 for pile extraction and cutting related work performed between June 17, 2022, and June 22, 2023. Dkt. 78-8 at 1–2; WRSMF ¶ 15. Walsh forwarded PCO 61 to the USCG as Request for Equitable Adjustment ("REA") 006 on November 8, 2023, Dkt. 78-9; ARSMF ¶ 128, and the USCG denied the claim on January 18, 2024, stating:

> The Contractor was responsible for verifying the actual site conditions despite what the as-built drawings showed. In addition, per FAR 52-236-2 [sic], the Contractor should have notified the [contracting officer] of the differing site condition when it was discovered in June of 2022 before disturbing the site. Overall, this appears to be a means and methods issue.

Dkt. 78-10 at 4.

Walsh moves for summary judgment on ACK Marine's breach of contract claim as to PCO 61 on the ground that Article 11.3 bars ACK Marine from recovering on pass-through claims that the USCG already rejected. *See* Dkt. 77 at 1; Dkt. 78 at 8. Walsh further argues that under the Subcontract, ACK Marine "affirmatively agreed to 'verify existing conditions prior to starting' its work" and was "only entitled to rely upon drawings provided by the USCG to the same extent as Walsh under the Prime Contract." Dkt. 78 at 9 (quoting Subcont. at 33). In addition to arguing that PCO 61 is not a pass-through claim, and that even if it was, Walsh failed to sponsor it in good faith, Dkt. 94 at 7–8, ACK Marine argues that Walsh, rather than ACK Marine, "was contractually obligated to perform an adequate site investigation, and it failed to do so," *id.* at 8.

The USCG's Project specifications direct the Contractor to retain a consultant and mandate that "[a]ny additional geotechnical investigation deemed necessary by the consultant shall be . . . paid for by the Contractor." Dkt. 78-2 at 71. In addition, FAR 52.236-3, which is incorporated into the Subcontract, *see* Dkt. 78-1 at 6; Subcont. at 3, states that the Contractor must "satisf[y] itself as to the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work done by the Government, as well as from the drawings and specifications," Dkt. 78-5 at 2. However, the Subcontract states that "[t]he Subcontractor assumes toward Contractor all of the obligations, risks and responsibilities that Contractor . . . has assumed toward the Owner," Subcont. at 3, and, more specifically, that "Subcontractor shall . . . verify existing conditions prior to starting," *id.* at 33. Deposition testimony by an ACK Marine representative describes a site visit with Walsh and ACK Marine representatives before ACK Marine bid on the project. The site visit lasted less than one hour and attendees did not go under the pier; according to the testimony, "[on] a secure site, when they bring you in to do a site visit,

they direct you where to go. You see what they show you and you leave." Dkt. 96-16 at 14:24–15:2; *see also id.* at 13:2–14:23.

It is ambiguous whether the Project specifications, Subcontract, and FAR, taken together, ultimately assign responsibility for verifying site conditions to ACK Marine or Walsh, and the scope of that responsibility. It is likewise not clear on the face of the USCG's denial of the PCO—which refers, at various points, to "ACK," "Walsh," and "the Contractor," Dkt. 78-10 at 4—whether "Contractor" refers to ACK Marine or Walsh, when stating that "the Contractor" was responsible for verifying site conditions and notifying the USCG as soon as the differing site condition was apparent. Accordingly, there are disputes of material fact that preclude summary judgment on this claim.[4] *See Minturn v. Monrad*, 585 F. Supp. 3d 123, 127 (D. Mass. 2022) ("[C]ontract interpretation is a question of law suitable for resolution on summary judgment unless the Court finds that the terms of the contract are ambiguous."), *aff'd*, 64 F.4th 9 (1st Cir. 2023). Defendants' motion for partial summary judgment is denied as to PCO 61.

**ii. <u>Pile Bracing Claim (PCO 9R1)</u>**

ACK Marine also asserted that it encountered difficulties insofar as there was more steel bracing supporting the piles than anticipated or shown on the USCG plans. Dkt. 78-11 at 1 (stating that there were over 500 pieces of steel bracing to remove, as compared to the 197 estimated); *see also* ARSMF ¶ 40; Dkt. 78-6 at 21 (Subcontract Exhibit B, estimating 197 items of pile bracing). On November 28, 2022, ACK Marine submitted PCO 9 to Walsh, requesting $135,158.00 for work performed from May 5, 2022, through August 16, 2022. Dkt. 78-11; ARSMF ¶ 41. On March 23, 2023, ACK Marine submitted a revised PCO, PCO 9R1, to Walsh, requesting $221,105 for work

[4] Having concluded that there are disputes of material fact regarding the verification of site conditions, the Court need not consider ACK Marine's other arguments in opposition to summary judgment. *See* Dkt. 94 at 7–10.

performed from May 5, 2022, through March 10, 2023. Dkt. 78-12; ARSMF ¶ 43. Walsh forwarded the claim to the USCG as REA 4 on November 7, 2023. Dkt. 78-13; ARSMF ¶ 44. The USCG denied the claim:

> [T]he claim for the additional 295 steel pieces is invalid as the Contractor was responsible for verifying the actual conditions despite what the as-built drawings showed. . . . ACK Marine noted approximately May of 2022 that they would be exceeding the contract quantity of steel bracings to be removed but notification was not made, and Walsh did not notify the [contracting officer] until after the work was completed, thus not meeting the requirements of FAR 52.236-2. Based on the two factors above, the recommendation of the technical report and the determination of the Government is that these additional steel bracings do not constitute either a Type 1 or Type 2 Differing Site Condition, and thus, no additional monetary adjustment to the contract will be considered.

Dkt. 78-14 at 2.

Just as it did with respect to the pile extraction claim, Walsh moves for summary judgment on ACK Marine's breach of contract claim as to PCO 9R1 because Article 11.3 bars ACK Marine from recovering on pass-through claims that the USCG already rejected. *See* Dkt. 77 at 1; Dkt. 78 at 9–10. ACK Marine, again, disputes that PCO 9R1 is a pass-through claim, and argues that, rather than a lump sum contract, the Subcontract is a unit price contract, under which ACK Marine is entitled to additional compensation under FAR 52.211-18 if the actual quantities of steel bracing removed fluctuate more than 15 percent. Dkt. 94 at 11.

In support of its opposition to summary judgment, ACK Marine looks to Exhibit B of the Subcontract, which includes a "Unit Price Schedule" and states: "Total Estimated Value of Unit Price Agreement $6,081,900." *Id.* (quoting Subcont. at 23). Defendants dispute that the Subcontract is a unit price contract, pointing to the line item in Exhibit B that states, "[t]his is a lump sum price contract, quantities below are for reference and are based on the preliminary design." Dkt. 110 at 10 (quoting Subcont. at 21). Defendants also note that the Unit Price Schedule begins by stating: "*If* this is a unit price Agreement, quantities provided are estimates only and

may vary." *Id.* (emphasis in original) (quoting Subcont. at 23). Moreover, ACK Marine concedes that "[i]tem numbers 2000, 3000 and 3500 in the Unit Price Schedule are the demolition items," Dkt. 94 at 11, all of which have "1.000" as the quantity and "LS" in the column labeled "U.O.M.," Subcont. at 23. Read together, the Subcontract is susceptible to only one plausible reading—that it is a lump sum contract.

However, the disputes of material fact as to which party was responsible for verifying site conditions, *see supra* Section III.A.1.a.i, are also relevant to the pile bracing claim, *see* Dkt. 110 at 9; ARSMF ¶¶ 45, 48; *see also* Dkt. 78-14 at 2 (denying adjustment in part because "the Contractor was responsible for verifying the actual conditions despite what the as-built drawings showed"). In addition, ACK Marine raises additional disputes of material fact regarding the parties' conduct and contractual obligations. *See, e.g.*, Dkt. 94 at 13 (arguing that Walsh failed to sponsor the bracing claim in good faith because "[e]ven though Walsh acknowledged to the USCG that Walsh and ACK were discussing additional compensation to ACK for the Pile Bracing going back to May of 2022, Walsh did not submit a request for equitable adjustment of its contract with the USCG until November 7, 2023" (emphasis removed)); *id.* (emphasizing that, in denying the adjustment, the USCG stated that "ACK Marine noted approximately May of 2022 that they would be exceeding the contract quantity of steel bracings to be removed but notification was not made, and *Walsh* did not notify the [contracting officer] until after the work was completed, thus not meeting the requirements of FAR 52.236-2" (emphasis added) (quoting Dkt. 78-14 at 2); ARSMF ¶ 122 (dispute regarding Walsh and ACK Marine's conversations regarding ACK Marine's entitlement to additional compensation). Accordingly, Defendants' motion for partial summary judgment is denied as to PCO 9R1.

**iii. Obstructions Claim (PCOs 32 and 33 *et seq.*)**

ACK Marine encountered obstructions when driving in the new piles. ARSMF ¶ 130. In response, Walsh submitted contract modification request ("CMR") 010 to the USCG on March 1, 2023, and CMR 015 on September 19, 2023. *See* ARSMF ¶ 50; Dkt. 78-15; Dkt. 78-16. Pursuant to CMRs 010 and 015, ACK Marine had been directed to track costs and labor associated with obstructions encountered while driving in the piles, ARSMF ¶ 51, though the parties dispute whether ACK Marine was to track these costs on a time and materials ("T&M") basis, *id.* ¶ 134; *see also* Dkt. 94 at 14; Dkt. 110 at 12–13. ACK Marine's accounting of hours was notably different from the hours tracked by Walsh and the USCG. Dkt. 78-16 at 4; ARSMF ¶¶ 53–54. When Walsh submitted CMR 015 to the USCG, the USCG took issue with some of the amounts claimed by ACK Marine. *Id.* ¶ 55; Dkt. 80 ¶ 27. The USCG issued a contract modification to the Prime Contract, increasing the contract price by $633,812. Dkt. 78-17; ARSMF ¶ 57. This was less than ACK Marine had requested. *See* Dkt. 78-16 at 4.

Walsh moves for summary judgment on ACK Marine's breach of contract claim as to the obstructions PCOs because Article 11.3 bars ACK Marine from recovering on pass-through claims that the USCG already rejected. *See* Dkt. 77 at 1; Dkt. 78 at 10–11. However, a number of disputes of material fact render summary judgment inappropriate at this stage. The parties dispute whether Walsh submitted all of ACK Marine's T&M slips related to the obstructions work to the USCG, *see* Dkt. 96 ¶ 34; ARSMF ¶ 151; what funding the USCG allocated for ACK Marine's obstructions work, *see* ARSMF ¶¶ 55, 57, 149; and how much ACK Marine was ultimately paid for removing obstructions, *see id.* ¶ 150. Accordingly, summary judgment is unwarranted and Defendants' motion for partial summary judgment is denied as to the obstructions PCOs.

**b. Untimely and Incomplete Claims**

Defendants next move for summary judgment on a subset of sixteen PCOs. Defendants argue that ACK Marine failed to comply with Article 4.3 of the Subcontract, which governs any "demand or assertion seeking, as a matter of right, an increase or decrease in the Subcontract Amount [or] an extension in the time for performance of [ACK Marine's] Work," when submitting these PCOs, and that because ACK Marine failed to do so, Defendants are entitled to summary judgment.[5] Dkt. 78 at 11 (quoting Subcont. at 6).

Article 4.3 of the Subcontract states that ACK Marine was obligated to submit to Walsh written notice of any claim, titled "Initial Notice of Claim," by the earliest of:

> (1) if the Claim could not have been foreseen by the Subcontractor prior to beginning the impacted work, . . . within five (5) days after starting the work impacted by, or which is the subject of, the Claim; or (2) if the Claim could have been foreseen by the Subcontractor prior to beginning the impacted work . . . within five (5) days prior to starting the work impacted by, or which is the subject of, the Claim; or (3) as required under the Prime Contract Documents.

Subcont. at 6. ACK Marine was then required to submit the "Claim" itself "by the earlier of: (1) three (3) days prior to the date by which [Walsh] [wa]s obligated to submit the Claim to [USCG]; or (2) or within fifteen (15) days of completion of the Claim work," and include therein:

> (1) the amount of money and/or time extension sought by the Subcontractor, and the contractual and factual basis for each . . . ; (2) a general statement of the basis for the Claim; (3) the facts underlying the Claim; (4) the Initial Notice to the Contractor; (5) reference to the applicable Contract Documents; (6) all documentation that describes, relates to, and/or supports the Claim and all documents required to be submitted for a Claim under the Prime Contract Documents; and (7) certification that the Claim is made in good faith, and that the supporting data and documentation is accurate and complete to the best of the Subcontractor's knowledge.

---

[5] Defendants move for summary judgment on this claim as to the following PCOs: PCO 9, PCO 11, PCO 11.1, PCO 12, PCO 12.1, PCO 14, PCO 14.1, PCO 15, PCO 15.1, PCO 16, PCO 17R1, PCO 61, PCO 71, PCO 77, PCO 88, PCO 95.

*Id.* The provision further provides that "any failure on the part of the Subcontractor to submit the Initial Notice or the Claim in strict accordance with the requirements contained within this article, will constitute a waiver of the Subcontractor's right to pursue the Contractor or the Contractor's surety for the Claim." *Id.*

Defendants argue that ACK Marine failed "to comply with the most basic timing, notice and content obligations of Article 4.3 of the Subcontract" and that ACK Marine admitted as much in its interrogatory responses. Dkt. 78 at 13; *see also* Dkt. 78-18 at 9 (ACK Marine's answer to Interrogatory No. 7, stating that "ACK did not provide an 'Initial Notice of Claim' or 'Claim Submission' because that was not required by the Subcontract"). ACK Marine does not dispute that it did not follow the requirements of Article 4.3. Dkt. 94 at 16–22. Rather, ACK Marine argues that Article 4.3 (along with Articles 4.1 and 4.2) is modified by Section 13 of Exhibit E of the Subcontract, which "makes it clear that the subcontractor has to proceed all the way through the proposed change order/change order process until the subcontractor knows whether there is an existing claim." *Id.* Defendants dispute this characterization of the relationship between the change order process and the claim process, and counter that Section 13 of Exhibit E, which provides "unequivocal direction to follow the terms of Article 4," Dkt. 110 at 15, does not *modify* Article 4.3 by stating that "[p]ayment for any extra work will not occur until all costs have been finalized, an appropriate change order has been prepared / executed," *id.* (quoting Subcont. at 31). Rather, Defendant contend, Exhibit E merely restates what is already contained in Article 4.1. *Id.*

Section 13 of Exhibit E to the Subcontract states, in relevant part:

> Subcontractors/Suppliers are referred to Article 4 - Changes, Claims and Delays in The Exhibit A Terms and Conditions for contractual clarifications on extras and/or cost impacts. The Project Manager and Superintendent will represent [Walsh's] interests and will have the only authority to obligate [Walsh] to onsite decisions. [Walsh's] Project Manager is the only individual who can obligate [Walsh] to

> financial decisions. [Walsh's] Superintendent will only sign for verification of work performed.
>
> Payment for any extra work will not occur until all costs have been finalized, an appropriate change order has been prepared / executed, and the extra work has been properly invoiced in the monthly pay process. Partial payments will not occur on any extra work unless previously agreed prior to the start of extra work.

Subcont. at 31.

The language of the provisions at issue, and the relationship between them, is "reasonably susceptible to multiple, plausible interpretations." *Nault v. United States*, 517 F.3d 2, 4 (1st Cir. 2008). Therefore, the Subcontract is ambiguous, *see Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 783 (1st Cir. 2011) ("A contract is . . . ambiguous where . . . the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken."), and this claim is unsuited for resolution at the summary judgment stage,[6] *see Minturn*, 585 F. Supp. 3d at 127 ("[C]ontract interpretation is a question of law suitable for resolution on summary judgment unless the Court finds that the terms of the contract are ambiguous."). Accordingly, Defendants' motion for partial summary judgment is denied as to the sixteen PCOs at issue.

### 2. <u>Count II: Quantum Meruit</u>

Defendants argue that they are entitled to summary judgment on ACK Marine's quantum meruit claim because "[i]t is well settled that quantum meruit relief may not be granted where an express contract covering the matter exists." Dkt. 78 at 22 (quoting *York v. Zurich Scudder Invs., Inc.*, 66 Mass. App. Ct. 610, 620 (2006)). ACK Marine counters that, "[b]y submitting a request to the USCG for an equitable adjustment to Walsh's contract based on the very same facts that

---

[6] Finding that the Subcontract itself is ambiguous, the Court need not address ACK Marine's argument as to Walsh's conduct, which ACK Marine argues raises additional disputes of material fact. Dkt. 94 at 18–27.

underline PCO 061, Walsh has admitted that ACK performed work not covered by the Subcontract," and that "[i]f ACK is barred from being compensated for that work due to Walsh's failure to sponsor an alleged pass-through claim in good faith, then that triggers a claim in quantum meruit." Dkt. 94 at 9.

"To recover under quantum meruit in a construction case, a contractor must prove both substantial performance of the contract and an endeavor in good faith to perform the work fully." *G4S Tech. LLC v. Mass. Tech. Park Corp.*, 479 Mass. 721, 735 (2018); *see also J.A. Sullivan Corp. v. Com.*, 397 Mass. 789, 796 (1986), *overruled on other grounds by*, *G4S Tech.*, 479 Mass. 721. However, for the same reasons that summary judgment is inappropriate on the breach of contract claims, *see supra* Section III.A.1, issues of material fact as to the fulfilment of contract obligations render summary judgment inappropriate as to the quantum meruit claim. Accordingly, Defendants' motion to dismiss as to Count II is denied.

**3. Count IV: Payment Bond**

Defendants argue that because "[i]t is a bedrock principle that the surety's liability on a payment bond is coextensive with that of its principal," *Costa v. Brait Builders Corp.*, 463 Mass. 65, 70 n.10 (2012), "Travelers is entitled to summary judgment on Count IV for the same reasons and to the same extent that Walsh is entitled to partial summary judgment as to Count I," Dkt. 78 at 23. However, because the Court denied Defendants' motion for partial summary judgment as to Count I, so must the Court deny Defendants' motion as to Count IV.

**B. ACK Marine's Motion for Partial Summary Judgment**

**1. Count I & Counterclaim I: Breach of Contract**

**a. Walsh's Backcharges**

ACK Marine and Walsh met in December 2023 to discuss closing pending PCOs. WRSMF ¶ 68. At that meeting, Walsh presented ACK Marine with backcharges purportedly owed to

Walsh. *Id.*; *see also* Dkt. 100-4 at 3–4. ACK Marine moves for summary judgment on ACK Marine's breach of contract claim and on Walsh's breach of contract counterclaim with respect to Walsh's $412,760.16 in asserted backcharges. Dkt. 84 at 6–7. ACK Marine argues that "Walsh did not assert the backcharges in good faith" but rather "as leverage to negotiate against ACK's open PCOs," and that Walsh is therefore entitled to immediate payment of that amount. *Id.* at 7. Defendants counter that, in moving for summary judgment, ACK Marine failed to address the *merits* of the backcharges, and argue that "ACK Marine can hardly obtain summary judgment on Walsh's breach of contract claim without demonstrating Walsh is not entitled to the relevant costs in the first instance." Dkt. 100 at 5. Further, Defendants contend that "[t]hat Walsh considered these costs as potential offsets or discussion points in settlement negotiations does not in any way diminish the underlying entitlement to these costs, much less exhibit bad faith," and argue that Walsh is entitled to deduct backcharges under Article 3.12. *Id.*

Defendants have the better of the two arguments. Whether Walsh is entitled to the backcharges is a question of fact unsuited to resolution at summary judgment. Further, as discussed in more depth below, issues of intent present questions of fact for the trier of fact. *See infra* Section III.B.2. Accordingly, ACK Marine's motion for partial summary judgment on Count I and Counterclaim I as to Walsh's backcharges is denied.

**b. <u>Pile Design Claim (PCO 68R3)</u>**

In addition to extracting existing piles, as described above, ACK Marine was also tasked with driving new piles into the seabed to support the new structures. WRSMF ¶ 42. The length of the piles was specified in the design documents and Walsh furnished the piles to ACK Marine. *Id.* ¶¶ 42, 45–47. Issues arose regarding the pile bearing capacity when the piles were tested, and Walsh communicated with Collins Engineers, Inc. ("Collins") regarding the pile design issues. *Id.* ¶¶ 48, 50, 63. ACK Marine continued to work on the Project while the pile design issue was being

remediated. *Id.* ¶ 51. ACK Marine submitted numerous PCOs related to the pile design work, and was paid $652,336.35 pursuant to Unilateral Change Order No. 13. *Id.* ¶ 53; *see also* Dkt. 85-18 at 2 (Unilateral Change Order No. 13).

More specifically, in April 2023, Walsh requested pricing information from ACK Marine related to pile installation. WRSMF ¶ 55. On April 4, 2023, ACK Marine submitted PCO 68, estimating $958,100 in additional costs, which Walsh did not approve. *Id.* ¶¶ 56, 58. On April 10, 2023, ACK Marine submitted PCO 68R1, estimating $1,227,376 in additional costs, which Walsh did not approve. *Id.* ¶ 59; *see also* Dkt. 85-21 (PCO 68R1). On April 17, 2023, ACK Marine submitted PCO 68R2, estimating $1,441,082 in additional costs, which Walsh did not approve. WRSMF ¶¶ 60, 62; *see also* Dkt. 85-22 (PCO 68R2). After the additional pile length redesign work was completed, ACK Marine submitted PCO 68R3, requesting $1,419,714 in "actual" costs. WRSMF ¶¶ 65, 118; *see also* Dkt. 85-25 (PCO 68R3).

ACK Marine moves for summary judgment on Count I and Counterclaim I with respect to liability on PCO 68R3. ACK Marine argues that "[d]espite the fact that PCO 68R3 was not a pass-through claim and that Walsh directed ACK to perform the work on a T&M basis, Walsh determined that it would not pay ACK any money that Walsh could not recover from Collins," whose design error caused the pile design problems. Dkt. 84 at 16. Walsh disputes that it directed ACK Marine to work on a T&M basis under Article 4.2, argues that "Walsh in good faith issued ACK Marine Unilateral Change Order 13 for the undisputed amount owed ACK Marine - $652,336.35 – before recovering any amount from Collins," and argues that Walsh did not pay PCO 68R3 because Walsh believed it was "greatly inflated and did not accurately reflect the work required." Dkt. 100 at 14–15.

Central to this claim are several disputes of material fact—namely whether Walsh directed ACK Marine to work on a T&M basis under Article 4.2 of the Subcontract, *see* Dkt. 85-20 (email from ACK Marine referring to T&M slips to be signed by Walsh); Dkt. 85-26 (email from Walsh Senior Project Manager stating, "Please be advised that Collins/Summit are directing ACK to proceed on a T&M basis to provide additional work to achieve Collins' intended design."); Dkt. 104-3 at 40:23–41:3 (deposition testimony by Walsh 30(b)(6) witness agreeing only that "while [he] w[as] reviewing [PCO 68R2] for merit, [he] w[as] also directing ACK to continue performing in the field"); Subcont. at 6 (Article 4.2 stating "[t]he Contractor may order changed work to be performed on a time and material basis by written notification to Subcontractor"), and the payment to which ACK Marine is entitled, if any, under PCO 68R3, *see* Dkt. 84 at 17; Dkt. 100 at 14.[7] In light of these disputes of material fact, summary judgment is inappropriate. ACK Marine's motion for partial summary judgment on Count I and Counterclaim I as to PCO 68R3 is denied.

**c. <u>Pile Extraction Claim (PCO 61)</u>**

For substantially the reasons the Court denied Defendants' motion for partial summary judgment on Count I as to this PCO, *see supra* Section III.A.1.a.i, ACK Marine's motion for partial summary judgment as to this PCO is denied.

**a. <u>Obstruction Claim (PCO 32)</u>**

For substantially the reasons the Court denied Defendants' motion for partial summary judgment on Count I as to this PCO, *see supra* Section III.A.1.a.iii, ACK Marine's motion for partial summary judgment as to this PCO is denied.

[7] Though ACK Marine moves for summary judgment only as to *liability* on PCO 68R3, *see* Dkt. 84 at 16; *see also id.* at 17 ("The sole dispute on ACK's breach of contract claim is damages."), the Court is not persuaded that liability and damages are so neatly separable.

### 2. Count III: Chapter 93A

Finally, ACK Marine cross-moves for partial summary judgment on Count III on multiple grounds. First, ACK Marine argues that Walsh asserted artificial backcharges and brought a counterclaim solely to gain negotiation leverage, which ACK Marine argues is a per se violation of Chapter 93A. Dkt. 84 at 20. Second, ACK Marine argues that Walsh failed to process all of ACK Marine's T&M slips without informing ACK Marine, to induce ACK Marine to continue working at its own expense. *Id.* at 20–21. Third, ACK Marine alleges that Walsh never intended to process PCO 68R2 and misrepresented its intent to ACK Marine to induce ACK Marine to continue working at its own expense. *Id.* at 21.

However, all three of ACK Marine's claims require that Court make findings as to Walsh's intent or motivation, which is inappropriate at the summary judgment stage. *See Daniels v. Agin*, 736 F.3d 70, 83 (1st Cir. 2013) ("Courts use special caution in granting summary judgment as to intent. Intent is often proved by inference, after all, and on a motion for summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party."); *In re Lantus Direct Purchaser Antitrust Litig.*, 2026 WL 942147, at *9 (D. Mass. Feb. 11, 2026) ("As a general matter, questions of subjective intent are usually inappropriate for disposition on summary judgment." (internal quotations marks omitted)), *report and recommendation adopted*, 2026 WL 939793 (D. Mass. Mar. 24, 2026). Accordingly, ACK Marine's motion for partial summary judgment is denied as to Count III.

## IV. Conclusion

For the foregoing reasons, both Defendants' motion for partial summary judgment and ACK Marine's motion for partial summary judgment are DENIED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: October 5, 2026